UNITED STATES TRUCKING CORPO-
RATION et al., Plaintiffs,

v.

AMERICAN EXPORT LINES, Inc., et al.,
Defendants.

United States District Court
S. D. New York.

Oct. 2, 1956.

Zelby & Burstein, New York City, for plaintiffs.

Herman Goldman, New York City, for defendants.

**EDELSTEIN, District Judge.**

Plaintiffs are motor carriers engaged in transporting waterborne freight to and from the piers of New York, and defendants are the operators of the waterfront terminals in the Port of Greater New York (and their agent). Prior to December of 1953 the loading and unloading of freight between pier and truck was performed by "public loaders", who were barred from the piers after that date by the New York-New Jersey Waterfront Commission Compact, McK. Unconsol.Laws, § 6700–aa et seq.; 67 Stat. 541. Pursuant to that Act, steamship companies and stevedores, in the capacity of terminal operators, entered into a conference agreement, approved by the Federal Maritime Board, to undertake the loading and unloading service. The terminal operators subsequently issued three tariffs, in sequence, which were duly filed with the board. Plaintiffs filed a complaint with the board, seeking an investigation and suspension of Tariff No. 3, and on September 14, 1956, the board entered an order of inquiry into that tariff. Plaintiffs here seek to enjoin defendants from enforcing Tariff No. 3 pending the hearing and final determination of issues before the Federal Maritime Board.

Plaintiffs, in this motion, challenge no order or decision of the board nor do they ask the court to declare the rates and practices of Tariff No. 3 illegal. They seek merely the maintenance of the status quo of the date of the board's order of inquiry, during the pendency of the administrative proceedings, and the injunction requested is said to be in aid of the board's processes. It has been held that such a temporary injunction may be granted by the court in the exercise of its equity powers. West India Fruit & Steamship Co. v. Seatrain Lines, 2 Cir., 170 F.2d 775; Isbrandtsen Co. v. United States, D.C., 81 F.Supp. 544. But in the former case, the administrative agency intervened to ask the assistance of the court to maintain the status quo, and in the latter it appeared that the agency had disclaimed the power to afford temporary relief. While the court's power should not be conditioned upon the granting or withholding of the approval of the administrative body, Reeber v. Rossell, D.C., 91 F.Supp. 108, 113, nevertheless, it ought to appear of record that equitable intervention by the court is necessary in aid of the administrative process. It is represented in plaintiffs' brief and oral argument that the board has maintained its lack of power to suspend a tariff of rates and charges filed after the agreement has been approved; but it does not appear that there has been in this case any formal application to the board to restrain the enforcement of Tariff No. 2.

However, the plaintiffs have cited cases of the board wherein it takes the position that it has no power to suspend or stay an approved agreement.[1] Assuming, then (even though the plaintiffs have taken the position that Tariff No. 3 itself is an unapproved agreement) that the equitable power of the court is necessary to the preservation of the status quo pending the completion of administrative action, that power is nevertheless a discretionary one to be exercised only after a balance of the harms the injunction might do to the opposing parties. And upon such a balance, the plaintiffs have not made a sufficient showing. While it may well be that plaintiffs will in fact suffer irreparable injury, the showing made is conclusory rather than evidentiary and demonstrates apprehension rather than imminence of injury. It is claimed that the truckers, unless they absorb the increased rates, to their financial detriment, will lose customers to the lighterage companies, and that in other instances, customers will divert

---

1. See Docket No. 767: Agreement and Practices Pertaining to Brokerage-Pacific Coast European Conference (Agreement No. 5200); In the Matter of Amendment to Brokerage Rule 21 Pacific Coast European Conference (Agreement No. 5200); "Report of the Board on Petition for Reconsideration in Part", decided June 8, 1956.

their freight from the Port of New York to other ports. But the competitive situation between truckers and lighters is not sufficiently set forth so that any reliable conclusions can be drawn, nor is it possible to conclude from the showing made that there is likely to be such a diversion of freight from the Port of New York, because of Tariff No. 3, as to cause substantial injury to the plaintiff. It would certainly seem, moreover, that the terminal operators have as much of a stake in the prosperity of the Port as have the truckers. On the defendants' side of the scales, a study was made of their direct labor costs and the cost of equipment used by them to perform the work of truck loading and unloading services described in Tariff No. 2, which was superseded by Tariff No. 3. The results of the study indicated that the expenses of the terminal operators for the performance of the services rendered by them exceeded by more than $500,000, the gross revenue collected during the six month period of the study. Should a temporary injunction issue pending the board's decision on plaintiffs' complaint and its own inquiry order, defendants of course would be relegated to Tariff No. 2. And should the board sustain Tariff No. 3, it is difficult to see from whom and on what basis the defendants could collect the difference. On the whole, I feel that plaintiffs have not adequately demonstrated either irreparable injury or a balance of the equities in their favor.

■ Plaintiffs maintain also that Tariff No. 3 is more than an implementation and extension of the originally approved conference agreement, but is in itself an agreement requiring approval under Section 15 of the Act, 46 U.S.C.A. § 814. Inasmuch as there has been no board approval, it is argued that the effectuation of the unapproved agreement is illegal, warranting temporary injunctive relief. Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51, 56. But, although it is stated that the board rejects the plaintiffs' characterization of Tariff No. 3, the issue does not appear to have been raised for the board's consideration, and it is certainly one appropriate for the exercise of the agency's primary administrative jurisdiction. In any event, the present record would be an inadequate basis for decision.

The motion for a temporary injunction will be denied.